```
         IN THE UNITED STATES DISTRICT COURT
        FOR THE NORTHERN DISTRICT OF ILLINOIS
                    EASTERN DIVISION
```

| | |
|---|---|
| **AARON HOFFMAN,** <br><br> Plaintiff, <br><br> v. <br><br> **SARA LEE CORPORATION and SARA LEE CORPORATION EXECUTIVE PAY PLAN FOR KEY EMPLOYEES,** <br><br> Defendants. | Case No. 11 C 3899 <br><br> Hon. Harry D. Leinenweber |

### MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff's Motion to Allow Discovery in a suit concerning denial of severance pay under a plan covered by the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.* For the following reasons, the motion is granted in part and denied in part.

### I.  BACKGROUND

Plaintiff Aaron Hoffman ("Plaintiff" or "Hoffman") worked for Sara Lee Corporation ("Sara Lee") from November 8, 1999 to November 30, 2010. As Sara Lee's Director of Investor Relations from 1999 to 2001, and then as the Vice President of Investor Relations, Hoffman was eligible for benefits under the Sara Lee Corporation Severance Pay Plan for Key Employees ("the Plan").

Sometime between 2009 and leaving the company, Hoffman had discussions with his boss, Marcel Smits ("Smits") (then the Chief

Financial Officer) about the possibility of a Sara Lee merger resulting in the elimination of Hoffman's job. The parties disagree on whether Smits actually asked Hoffman to leave or whether Smits was just apprising Hoffman of the possibilities so Hoffman could look out for his own interests. Which version is correct is central to this case because only those key employees who are asked to leave Sara Lee are eligible for severance under the Plan.

The parties agree that on July 15, 2010, Smits, in an employee evaluation of Hoffman, wrote "Aaron and myself have talked about it at some point in time being in Aaron's best interest to pursue a career move outside Sara Lee. Aaron would do wisely if in FY 2011 he works toward positioning himself in such a way that he is likely to attract a good outside offer."

The parties disagree over Plaintiff's contention that, on July 15, 2010, Smits explicitly, orally told Hoffman he would have to leave in fiscal year 2011 (July 1, 2010 through June 30, 2011) and that Smits assured Hoffman he would receive severance when he did so. The parties also disagree on the tenor and contents of discussions between Smits and Hoffman on November 10, 2010 when Hoffman announced his impending departure: Plaintiff contends Smits admitted telling him to leave; Defendants contend Plaintiff asked to be fired so he wouldn't have to leave his severance behind, and that they actually asked him to stay on.

Hoffman left Sara Lee November 30, 2010 and applied for severance December 28, 2010. He was denied severance on January 25, 2011 in a letter signed by Sara Lee's Vice President of Human Resources, Lena Koldras ("Koldras"). Hoffman appealed to the Plan's Appeals Committee ("the Committee") on February 10, 2011, and received a final denial letter dated April 19, 2011. Hoffman filed this suit June 8, 2011, and on October 3, 2011, this Court dismissed an estoppel count, leaving only one count for violation of Section 502 of ERISA.

On December 14, 2011, Plaintiff filed a Motion to Conduct Discovery, alleging the Plan has an inherent structural conflict of interest as well as two additional, specific problems with the Defendants' ERISA claims processes.

Plaintiff points out that the Plan Administrator both decides claim eligibilities under the Plan and is the payor of benefits (the "structural" conflict of interest).

He also claims specific bias in that Sara Lee's Human Resources Vice President Lena Koldras granted severance pay to a similarly situated individual working in Human Resources, Brad Patrick ("Patrick") — the implication being that the Human Resources Department improperly favors its own employees. (Koldras' written testimony to the Committee, conversely, factually distinguished Patrick's situation from the Plaintiff's and gave an

example of another executive who had been denied benefits because he or she initiated departure.)

Finally, Plaintiff also alleges procedural unfairness in Defendants' appeals process, contending it was improper for Koldras to act as both the initial adjudicator of benefits and then as chief fact-finder for the Committee.  Defendants contend the Committee considered other testimony and Koldras was not part of the Committee's decision.

Plaintiff seeks depositions of Koldras, Patrick (the similarly situated employee) and an as-yet unnamed member of the Committee, as well as documents and policies relating to claims handling procedures.

## II.  **LEGAL STANDARD**

Ordinarily, discovery in federal courts is governed by Federal Rule of Civil Procedure 26 and allows for "liberal discovery." *Carter Products, Inc. v. Eversharp, Inc.*, 360 F.2d 868, 872 (7th Cir. 1966).

However, ERISA plans fall into a different category.  The Seventh Circuit has found Congress intended to allow administrators wide discretion in interpreting plans and deciding if applicants qualify for those benefits.

As a result, the cases are judged by an "arbitrary and capricious" standard, and the Seventh Circuit has generally limited discovery to the administrative record present before the plan's

appeals committee. Discovery beyond that is limited to the extraordinary circumstance where, prior to discovery, plaintiffs identify (I) a specific conflict of interest or instance of misconduct and (ii) make a *prima facie* showing that there is good cause to believe limited discovery will reveal a procedural defect in the plan administrator's determination. *Semien v. Life Ins. Co. of N. Am.,* 436 F.3d 805, 815 (2006).

The "arbitrary and capricious" standard constitutes a "high bar" to discovery and, at least until a recent U.S. Supreme Court decision, it was settled law in the Seventh Circuit that a plan's inherent financial interest in denying claims was not a specific enough conflict to warrant discovery beyond the administrative record. *Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan*, 195 F.3d 975 (1989) (noting "it is unsound for the judiciary to automatically impute the plan administrator's position to the person who decides on its behalf").

In 2008, however, the Supreme Court of the United States decided *Metropolitan Life Insurance Company, et al. v. Glenn,* 554 U.S. 105. There, the Court held that the fact that a plan administrator both evaluates claims for benefits and pays benefits claims creates a conflict of interest must be weighed when considering whether an abuse of discretion has occurred. *Id.* at 113. But, the Court concluded, that consideration does not change the standard of review from deferential to *de novo*. *Id.* at 115.

"Neither do we believe it necessary or desirable for courts to create special burden-of-proof rules, or other special procedural or evidentiary rules, focused narrowly upon the evaluator/payor conflict," wrote the Court. *Id.* at 116.

The Seventh Circuit has addressed *Glenn*'s impact, but not specifically in the context of how it affects the discovery rules laid out in *Semien*; rather it has said *Glenn* did not alter the standard of review.

> Fairly read, *Glenn* explains how the general principle established in *Firestone* should be applied to the more specific case in which responsibility for both claim determinations and pay-outs is vested in the same entity. In such a situation, a court is required to take such an obvious conflict of interest into consideration – along with all of the other relevant factors – in determining whether the entity's determination was arbitrary and capricious.

*Leger v. Tribune Co. Long Term Disability Benefit Plan, 557 F.3d 823, 831* (2009) (referencing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989). Later, in a footnote, the Seventh Circuit reiterated, in regards to the standard of review issue, "We reject [plaintiff's] suggestion that the Supreme Court's decision . . . 'fundamentally altered the paradigm for adjudicating ERISA claims.'" *Love v. Nat'l City Corp. Welfare Benefits Plan*, 574 F.3d 392, 396 n.1 (2009).

But where claims handling procedures and a plan administrator's motivations were out of reach of discovery before, post-*Glenn* Seventh Circuit cases imply they may now be within

reach. *Compare Semien*, 436 F.3d 805, 814 (noting "[T]he plan administrator's motivations should not be questioned" and "We have no reason to think that [a plan administrator's] benefits staff is any more 'partial' against applicants than are federal judges when deciding income-tax cases.") *with Edwards v. Briggs & Stratton Ret. Plan*, 639 F.3d 355, 364 (writing "[t]he gravity of the conflict . . . should be inferred from the circumstances of the case, including *the reasonableness of the procedures* by which the plan administrator decided the claim, *any safeguards the plan administrator has erected to minimize the conflict of interest*, and the *terms of the employment of the plan administrator's staff* that decides the benefit claims." *Id.* at 365-366 (emphasis added).

Moreover, the Seventh Circuit has said that, in cases where other factors are in play, "the presence of a [structural] conflict will 'act as a tiebreaker when the other factors are closely balanced.'" *Fischer v. Liberty Life Assur. Co.*, 576 F.3d 369, 377 (2009) (quoting *Jenkins v. Price Waterhouse Long Term Disability Plan*, 564 F.3d at 856, 861-862 (7th Cir. 2009). *See also, Raybourne v. Cigna Life Ins. Co. of N.Y.*, 576 F.3d 444 (7th Cir. 2009) (remanding case in light of *Glenn* for the district court's consideration of whether the case was one of those "borderline" cases).

With the Seventh Circuit not yet explicitly addressing the discovery implications of *Glenn*, District Courts in the Circuit

have split on whether discovery is allowed absent satisfaction of *Semien*'s two-prong test.

Like the majority of judges in the Northern District of Illinois, Magistrate Judge Arlander Keys found discovery unaffected by *Glenn*: "*Glenn* only considered examination of a conflict of interest – the procedure for doing so was established within this Circuit in *Semien*." *Allen v. HSBC – N. Am. (U.S.) Retirement Income Plan, et al.*, No. 09-5713, 2010 U.S. Dist. LEXIS 88065 (N.D. Ill. August 24, 2010)

But like the majority of judges in the Southern District of Indiana, Judge Robert M. Dow, Jr. of the Northern District of Illinois found that discovery is now implicitly allowed both by *Glenn* and the Seventh Circuit's interpretation of it. He wrote, "For the Supreme Court's decision in *Glenn* to be meaningful, the [structural] conflict either must be an automatic strike against the insurer – which no court has found – or the parties must be allowed to explore, in at least a limited fashion, whether the conflict actually motivated the plan administrator's decision." *Baxter v. Sun Life Assurance Co. of Canada*, 713 F.Supp.2d 766 (N.D. Ill. May 20, 2010). Judge Dow also wrote, "If the 'terms of employment' . . . could affect the court's determination, those 'terms of employment' are relevant and, if not contained within the administrative record, should be discoverable." *Id.* (referencing *Marrs v. Motorola, Inc.*, 577 F.3d 783, 789) (7th Cir. 2009)

- 8 -

### III. **ANALYSIS**

While the dueling interpretations of *Glenn* and the Seventh Circuit's views on *Glenn* are both plausible, this Court finds Judge Dow's interpretation more persuasive. The Seventh Circuit explicitly noted in *Marrs v. Motorola* that the terms of employment of staff who decide benefits might affect a determination. *Marris*, 577 F.3d 783, 789 (2009). So too, in *Majeski v. Metro Life Ins. Co.*, did the Seventh Circuit note that "safeguards the plan administrator has erected to minimize the conflict of interest" might be relevant to the ultimate decision. *Majeski*, 590 F.3d 478, 482 (2009). While, on occasion, details of these sort might somehow slip into an administrative record, they are generally the product of discovery requests. If these areas are now fair game for determinations of whether a plan acted arbitrarily and capriciously, they first must be before the court, and the way they get there is through discovery.

Here, Plaintiff has alleged not only the usual structural conflict of interest, but also that Defendant's Human Resources Vice President was both the primary denying party and the driving force behind the Committee's denial of appeal. Moreover, Plaintiff has alleged that the Vice President decided at least one case differently because the applicant belonged to her department. Defendants refute these allegations and contend they can show similarly situated employees treated similarly. But therein lies

- 9 -

the rub. The Court cannot factor in whether alleged biases played a role in the benefit determination if it does not know if they even exist.

Plaintiff has alleged there was not enough insulation between the Vice President of Human Resources, the primary decider, and the Committee. Defendant says there was. Whether there are adequate safeguards in place between the Committee and the employer to prevent bias is just the sort of inquiry to be considered under *Majeski* and other Seventh Circuit cases.

Defendant, rightly, argues that Plaintiff did not adequately lay out specifically what discovery he wants to conduct. Even *Baxter* recognizes that *Glenn* and subsequent Seventh Circuit cases do not open up ERISA cases to the full discovery allowed in other cases. *Baxter*, 713 F.Supp.2d 766, 773 (limiting discovery to conflict-of-interest matters). Therefore, this Court will likewise limit discovery to those inquiries targeting conflict-of-interest allegations and the safeguards in place to protect the appeals process from bias. The Court grants Plaintiff's Motion to Depose a member of the Committee, Koldras and the similarly situated ex-employee Brad Patrick. The Court similarly grants the Motion for Discovery of Documents and Policies related to claims handling procedures. However, the Court finds the request for information on other employees who sought benefits not specific enough to

determine if it is focused at a conflict-of-interest inquiry and therefore denies it.

## IV. CONCLUSION

Because the Court agrees with *Baxter v. Sun Life Assurance Co. of Canada* that *Glenn*, *Marrs* and *Majeski* have at least modified *Semien*'s denial of discovery in ERISA cases, the Court grants the Plaintiff's Motion for Discovery as to the depositions of Lena Koldras, the similarly situated ex-employee Brad Patrick, and a member of the Committee.  The Court similarly grants the Plaintiff's Motion for Discovery of Documents and Policies related to claims handling procedures.  The Court denies the Plaintiff's request for information on other employees who sought benefits.

**IT IS SO ORDERED.**

                                  Harry D. Leinenweber, Judge
                                  United States District Court

**DATE:** 2/8/2012