**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| AARON HOFFMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 11 CV 3899 |
| | ) | |
| SARA LEE CORPORATION AND | ) | Judge Leinenweber |
| SARA LEE CORPORATION | ) | |
| EXECUTIVE PAY PLAN FOR KEY | ) | Magistrate Judge Schenkier |
| EMPLOYEES, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

Defendants, Sara Lee Corporation ("Sara Lee" or the "Company") and the Sara Lee

Corporation Severance Pay Plan for Key Employees (the "Plan") (incorrectly denominated as the

"Sara Lee Corporation Executive Pay Plan for Key Employees"), by and through counsel, file

this Memorandum in Support of Defendants' Motion for Summary Judgment.

## I.    SUMMARY OF RELEVANT FACTS[1]

Plaintiff Aaron Hoffman ("Plaintiff" or "Hoffman") began working at Sara Lee on

November 8, 1999 and was the Vice President of Investor Relations when he voluntarily

terminated his employment with the Company on November 30, 2010 to take another job.

[Amended Complaint "Am. Compl." ¶¶ 8, 18; Defendants' Answers to Amended Complaint

"Answers" ¶¶ 8, 18 (Docket ## 18, 30)[2]; AR 4[3]] Plaintiff submitted a claim for severance

benefits under the Plan on December 28, 2010, asserting that he had been asked to resign by Sara

---

[1] Defendant has filed a separate Statement of Facts consistent with Local Rule 56.1.

[2] The Plan and Sara Lee filed separate Answers to Plaintiff's Amended Complaint. [Documents ## 18, 30] Defendants will cite to their Answers as collectively "Answers."

[3] On August 23, 2012 [Docket # 49] Defendants filed the Administrative Record with the Court, and then supplemented the record on November 20, 2012 [Docket # 60], which is Bates numbered 000001-000300 ("AR ___").

Lee's Chief Executive Officer Marcel Smits ("Smits") during his July 15, 2010 performance review. [AR 7]

Section 3.1 of the Plan provides that severance benefits are available for "[a] participant who, at his employer's request, agrees to voluntarily terminate his employment …or whose employment is involuntarily terminated for a reason other than proper cause…and who executes a release provided by his employer…." [Am. Compl. ¶ 10; Answers ¶ 10; AR 40] Under the Plan, Lena Koldras ("Koldras"), Sara Lee's Vice President, Human Resources, reviewed Plaintiff's initial benefit claim. [AR 12-17] On January 25, 2011, Koldras denied Plaintiff's claim based in part on his July 15, 2010 performance appraisal, which contained no evidence of a request for Plaintiff's resignation. [*Id.*] Koldras also found that Plaintiff refused Sara Lee's request to stay with the Company through January 31, 2011, despite being told that he would be compensated for doing so. [AR 13]

On February 10, 2011, Plaintiff submitted a claim appeal, asserting that Smits had indicated to him that his position would be eliminated due to changes within the Company. [AR 19-34] Plaintiff admitted that he declined to accept Sara Lee's offer of a seven-month pro rata bonus as a retention package to stay through mid-February 2011. [AR 21]  Plaintiff's claim appeal was reviewed by the Sara Lee Corporation ERISA Appeal Committee ("ERISA Appeal Committee"), which notified Plaintiff on April 19, 2011 that his claim denial was upheld. [AR 104-106, 298-299] The ERISA Appeal Committee determined that Smits had not asked Plaintiff to terminate employment during his performance review, noting that (i) Smits was surprised when Plaintiff resigned, (ii) Plaintiff was asked to stay with the Company but refused, and (iii) when other executives received severance, they had been terminated at the Company's request, were given a specific termination date, not paid merit increases or long term incentives, and

transition procedures were implemented. Plaintiff's resignation involved none of these circumstances. [AR 103-105, 299-299] The ERISA Appeal Committee thus found it unreasonable for Plaintiff to perceive Smits' comments during his performance review as a request for termination. [AR 105]

## II. <u>ARGUMENT</u>

### A. The ERISA Appeal Committee's Decision is Reviewed under an Arbitrary and Capricious Standard.

Where an ERISA plan grants discretion to determine eligibility for benefits or to construe the terms of the plan, as the Plan has granted to the ERISA Appeal Committee here, a highly deferential standard of review is applicable. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); [AR 40]. When a fiduciary is vested with such broad discretionary power, the reviewing court must uphold the decision unless it was arbitrary and capricious. *See Black v. Long Term Disability Ins.*, 582 F.3d 738, 744 (7th Cir. 2009); *Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan*, 195 F.3d 975 (7th Cir. 1999). The Court's review is limited to the evidence that was before the administrator at the time of its final decision. *Perlman*, 195 F.3d at 981-982 ("[d]eferential review of an administrative decision means review on the administrative record."). The reviewing court "do[es] not ask whether the administrator reached the correct conclusion or even whether it relied on the proper authority." *Kobs v. United Wis. Ins. Co.*, 400 F.3d 1036, 1039 (7th Cir. 2005). "Put simply, a[n] [administrator's] decision will not be overturned unless it is 'downright unreasonable.'" *Dougherty v. Indiana Bell Tel. Co.*, 440 F.3d 910, 917 (7th Cir. 2006) (citations omitted). Thus, in reviewing the ERISA Appeal Committee's decision, the Court will look only to ensure that the decision has rational support in the administrative record. *Speciale v. Blue Cross & Blue Shield Ass'n*, 538 F.3d 615, 621 (7th Cir. 2008).

**B. The ERISA Appeal Committee's Determination was Not Arbitrary and Capricious.**

   i.  The ERISA Appeal Committee Reasonably Determined that Plaintiff was not Asked to Leave the Company.

The ERISA Appeal Committee's determination that Plaintiff was not asked to leave Sara Lee's employ is strongly supported by administrative record. The ERISA Appeal Committee considered the timeline of events and substance of Plaintiff's conversations with Smits and reasonably concluded that Plaintiff irrationally perceived Smits' comments. Although Plaintiff presented a different version of the story and contended that Smits promised him severance benefits if he found another job, the ERISA Appeal Committee had discretionary authority to evaluate the conflicting evidence and make a determination consistent with the Plan terms. *See*, *Davis v. Unum Life Ins. Co. of America*, 444 F.3d 569, 578 (7th Cir. 2006) ("reaching a decision amid such conflicting medical evidence is a question of judgment that should be left to Unum under the arbitrary-and-capricious standard."). The ERISA Appeal Committee followed the Plan's terms, performed a thorough review of all evidence submitted with Plaintiff's claim and reasonably found Plaintiff's account to be inconsistent with the undisputed facts surrounding his departure from Sara Lee. Considering the deference afforded to its determination, the ERISA Appeal Committee's decision should not be disturbed.

The ERISA Appeal Committee reviewed Plaintiff's July 15, 2010 performance appraisal, which clearly shows that Smits did not ask Plaintiff to leave the Company. [AR 16-17] To the contrary, Smits praised Plaintiff for dealing well with challenges presented to him, and assigned him new goals for fiscal year 2011, which included assuming new roles and responsibilities. [*Id.*] Smits merely memorialized an ongoing exchange about Plaintiff's long-term career goals, stating that he and Plaintiff had discussed in the past about it "at **some point in time** being in [his] best interest to pursue a career move outside Sara Lee." [AR 17] (emphasis added) Given this

equivocal timeline for a career move, the goal assignments and expanded responsibilities for 2011, there was no reasonable basis for Plaintiff to believe that Smits was asking him to resign at that time.

The ERISA Appeal Committee also reviewed Smits' interview summary, in which Smits confirmed that he had not requested that Plaintiff leave and had not given him a specific termination date. [AR 99] Smits stated he had discussed Plaintiff's long-term future with him numerous times, and encouraged him to build his contacts and take advantage of opportunities, given the Company's uncertain future. [*Id.*] Smits stated he had similar career path conversations with all of his direct reports, and Koldras confirmed Smits was known for having such open dialogue with his employees. [*Id.*; AR 101] He explicitly denied telling Plaintiff during his performance review that he would receive severance benefits if he found a new position outside the Company. [*Id.*] Significantly, Smits found the timing of Plaintiff's resignation to be inconvenient due to the number of transitions occurring within the Company. [AR 100] He stated Plaintiff asked to be fired so that he could receive severance benefits, noting that he had another job offer but would leave too much money on the table if he did not get his severance benefits. [AR 100]

The ERISA Appeal Committee reasonably relied on Smits' interview summary as it was consistent with his previous statements to Lena Koldras, as well as Plaintiff's own prior statements. When Koldras performed Plaintiff's initial claim review, she interviewed Smits, who confirmed a previous conversation with Koldras in which he told her that he had several conversations with Plaintiff about his Sara Lee career path and future given the Company's potential break-up and other divestitures. [AR 12] Smits stated they never discussed Plaintiff's position being eliminated and he expressly told Plaintiff that he was not being asked to leave

5

Sara Lee. [AR 12] He confirmed that Plaintiff asked to be terminated, but that Smits refused the request because it was not the arrangement they had discussed and it would be disruptive and inconvenient to the Company. [AR 13] Smits even asked Plaintiff to stay with the Company through January 31, 2011 in exchange for additional compensation. [*Id.*] Smits discussed Plaintiff's request for severance benefits with Stephen Cerrone ("Cerrone"), Sara Lee's Executive Vice President Global Human Resources, who stated the Company would provide Plaintiff with a financial incentive to stay on. [*Id.*] Plaintiff flatly rejected this offer and started his new job immediately. [*Id.*]

The ERISA Appeal Committee found it significant that Plaintiff would not stay at Sara Lee for additional compensation despite the Company's request. [AR 105] Plaintiff's refusal was corroborated in his February 10, 2011 claim appeal, wherein he confirmed that Smits offered him a seven-month pro rata bonus as a retention package to stay through mid-February 2011. [AR 21] Plaintiff admitted he declined this offer because he had already accepted his new job. [*Id.*] Plaintiff also confirmed that Smits was surprised when he announced he was leaving for another job and expressed to Plaintiff that it was not a good time for him to leave. [*Id.*] These undisputed facts establish that the ERISA Appeal Committee reasonably concluded that Plaintiff voluntarily elected to terminate his Sara Lee employment rather than remain at the Company's request. [AR 105] Several courts in this Circuit have found severance denials to be reasonable and not arbitrary and capricious based on similar facts. *See Allen v. Baxter Intern. Inc.*, 2006 WL 560608, *9-10 (N.D.Ill. 2006) (upholding as reasonable a claim administrator's finding that plaintiff's rejection of a performance improvement plan constituted a voluntary termination.); *Reddinger v. SENA Severance Pay Plan,* 2010 WL 1836797, *4 (E.D.Wis. 2010) ("[t]o be eligible for severance, an employee must be involuntarily terminated. When an employer

attempts to *keep* an employee by offering severance payments in the future, and when it sweetens the deal with a retention bonus, the employee who resigns in the face of those inducements cannot be said to have been 'terminated' at all—much less involuntarily."); *Staple v. Ameritech Mobile Communications, Inc., a subsidiary of Ameritech Corp.,* 2002 WL 314465, *3-4 (N.D.Ill. 2002) (upholding severance denial where employee declined to take a lateral position with the same pay and without having to relocate).

Based on these undisputed facts, the ERISA Appeal Committee reasonably determined that Plaintiff and Smits had discussions regarding Plaintiff's potential departure from Sara Lee, but that Smits never asked Plaintiff to terminate his employment, never gave him a termination date, and never eliminated his position. [AR 105, 298] Indeed, there is no evidence in the administrative record to support Plaintiff's version of his conversations with Smits. Plaintiff's July 15, 2010 performance evaluation states nothing about Smits asking Plaintiff to leave in fiscal year 2011 and being eligible to receive severance benefits. [AR 20] To the contrary, Smits gave Plaintiff new roles, goals and responsibilities for the upcoming year, which is patently inconsistent with a request to leave the Company. [AR 17] There is also no significance to Plaintiff's and Smits' plane ride conversation in November 2009, which was a hypothetical exchange regarding Sara Lee's possible stock valuation. [AR 20] Smits did not recall telling Plaintiff that he would be entitled to severance benefits. [AR 99] Moreover, any severance discussion would have been hypothetical at best given the nature of the conversation and the fact that there was no plan in place at that time related to Plaintiff's possible termination. [AR 20]

Smits forthrightly stated that he and Plaintiff may have discussed circumstances where Plaintiff could have been entitled to severance benefits *if* he were asked to leave Sara Lee, but Smits clarified that no such circumstances existed when Plaintiff voluntarily resigned. [AR 99]

In fact, during Plaintiff's exit interview, Koldras inquired of Plaintiff whether he had followed up with Smits to confirm that he had been asked to leave. [AR 101] Plaintiff responded that he had not clarified his termination status with Smits before finding his new job. [*Id.*] Koldras denied telling Plaintiff during the exit interview that she agreed he had been told to leave Sara Lee. [*Id.*]

Despite disputes over some of the details of Plaintiff's and Smits' conversations, the undisputed and corroborated facts support the ERISA Appeal Committee's conclusion to deny Plaintiff's benefit claim. [AR 105] Again, it was the ERISA Appeal Committee's job to evaluate any conflicting evidence. *Davis*, 444 F.3d at 578; *Allen,* 2006 WL 560608, *9-10 (upholding severance denial and finding claim administrator considered both plaintiff's and employer's characterizations of termination).

ii.   Plaintiff's Resignation was Dissimilar to other Sara Lee Executives Who Were Terminated and Received Severance.

The ERISA Appeal Committee's determination is further bolstered by the vast differences between Plaintiff's resignation and the termination of Brad Patrick ("Patrick"), a human resources executive whom Plaintiff claimed was paid severance benefits under similar circumstances. [AR 20] Plaintiff asserted that Patrick received severance benefits after being asked to leave Sara Lee but was given time to find another position. [AR 20] However, Koldras and Smits both confirmed in their interviews that unlike Plaintiff, Patrick was unequivocally asked to leave and given a termination date. [AR 100, 101] Koldras stated Patrick was actually given six months notice of his termination date. [AR 100]

The ERISA Appeal Committee also recognized that the circumstances of Plaintiff's departure were inconsistent with several other executives who received severance benefits upon termination. [AR 105, 298] In each case where severance benefits were awarded, the executive's supervisor had (i) requested the termination and provided a specific termination date; (ii) merit

increases were not given; (iii) long term incentive grants were not given; and (iv) Sara Lee's standard transition procedures were implemented, including notification to accounting and meeting with human resources to transition the position. [AR 101, 103, 105, 298] Plaintiff, on the other hand, had (i) not been requested to leave the Company, (ii) was not given a specific termination date, (iii) received a $140,000 long term incentive grant in August 2010 and a regular merit increase on September 2, 2010, and (iv) no transition discussions or procedures took place. [AR 103, 105, 298] In fact, Plaintiff's roles, goals and responsibilities were actually expanded during his July 15, 2010 appraisal. [AR 16-17] Koldras also pointed out in her interview that in other cases were executives were terminated, their positions were eliminated entirely and not filled by someone at the same level. [AR 101] Yet, Plaintiff's position was **not** eliminated and someone at his same level took over his position after his departure. [*Id*.] Koldras further explained that Sara Lee did not allow any employee to establish his or her own termination date and still be eligible for severance benefits. [*Id*.] Although a Company-directed termination date may be delayed due to Company needs or mutual agreement, Plaintiff set his own departure date unilaterally, contrary to Sara Lee's wishes. [*Id*.]

The ERISA Appeal Committee also noted that there had been a situation similar to Plaintiff's, where a key executive advised Sara Lee that she was leaving on her own terms and requested severance benefits. [AR 105] Similar to Plaintiff, that executive's benefit claim was also denied because Sara Lee had not requested her to terminate her employment. [*Id*.]

None of the undisputed facts of Plaintiff's resignation indicate that he was asked to leave the Company at any point in time. In fact, Sara Lee even asked Plaintiff to stay on for a few months for additional compensation, and at the end of the extension he could have been eligible for severance benefits. However, there can be no involuntary termination where an employee

refuses an employer's attempt to retain him. *See Reddinger,* 2010 WL 1836797 at \*4; *Staple,* 2002 WL 314465 at \*3-4. The ERISA Appeal Committee's determination that Plaintiff did not leave Sara Lee at the Company's request is firmly supported by the administrative record and cannot be deemed arbitrary and capricious.

### C. Conflict of Interest Played no Factor in the ERISA Appeal Committee's Determination.

Defendants maintain their original objection to the supplementation of the administrative record with evidence that was not before the ERISA Appeal Committee at the time of its final determination. [Docket #57]; *Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan*, 195 F.3d 975, 982 (7th Cir. 1999). However, this additional evidence, which includes the deposition transcripts of Koldras, Mary Beth DeNooyer ("DeNooyer") and Patrick, Patrick's separation agreement, and a June 20, 2010 email between DeNooyer and Cerrone, only further bolsters the ERISA Appeal Committee's determination.

Although a court must take into account a claim administrator's structural conflict of interest as the decider and payor of benefits, the administrator remains entitled to the deference normally afforded under the arbitrary and capricious standard. *Black v. Long Term Disability Ins.*, 582 F.3d 738, 745 (7th Cir. 2009). The Seventh Circuit has repeatedly held that the Supreme Court's decision in *Metropolitan Life Ins. Co. v. Glenn,* 128 S.Ct. 2343, 2346 (2008) is just an extension of the principle established in *Firestone, i.e.,* that conflict is merely a factor that must be weighed along with all other relevant factors in determining whether its decision is arbitrary and capricious. *See Black*, 582 F.3d at 744-745; *Leger v. Tribune Co. Long Term Disability Benefit Plan,* 557 F.3d 823, 831 (7th Cir. 2009). As the Supreme Court in *Glenn* recognized, in a given case, the conflict factor can be a tie-breaker, "the degree of closeness necessary depending upon the tie-breaking factor's inherent or case-specific importance," while

10

in other cases "it should prove less important (perhaps to the vanishing point)." *Glenn,* 128 S.Ct. at 2351.

As detailed above, the ERISA Appeal Committee's decision has strong support in the administrative record. This is not the type of "close case" requiring a tiebreaker and a conflict of interest will tip the balance only in a borderline case. *Raybourne v. Cigna Life Ins. Co. of New York*, 576 F.3d 444, 450 (7th Cir. 2009). Moreover, it is Plaintiff's burden to prove not only that a conflict exists, but that it had a significant impact on the decision, balancing all of the relevant factors underlying that decision. *See, e.g., Marrs v. Motorola, Inc.,* 577 F.3d 783, 789 (7th Cir. 2009).

Plaintiff cannot meet this burden because the deposition testimony only supports the ERISA Appeal Committee's determination that Plaintiff was not asked to leave the Company. Brad Patrick testified that, unlike Plaintiff, he received unambiguous notice from his manager, Stephen Cerrone, in late Spring (likely April or May 2010) that his position was being eliminated and was given a July 2010 termination date. [AR 257-261] As that date approached, Sara Lee asked Patrick to stay longer to assist the Company with an important project. [AR 263-264] Patrick agreed to the Company's request to stay through August 2010. Unlike Patrick, Plaintiff flatly refused the Company's request to delay his departure. [*Id.*] Unlike Plaintiff, Patrick did not look for another job before receiving notice that his position was eliminated, even though he was already aware that his position might be cut due to Company changes. [AR 258-260, 262-263] There was utterly no bias in awarding Patrick severance benefits. Consistent with the other executives who received severance and unlike Plaintiff, Patrick was explicitly asked to leave Sara Lee, he received a clear termination date and he did not look for other employment prior to receiving his termination notice. In contrast, Plaintiff found another job first and only asked for

11

severance benefits afterwards. In sum, Patrick's and Plaintiff's terminations are completely unalike.

Koldras' testimony likewise supports the ERISA Appeal Committee's decision and confirms there was no bias. Koldras testified that at the time of Plaintiff's July 2010 performance appraisal, she talked to Smits about his comments on the appraisal. [AR 202-206] Smits explicitly stated that he did not tell Plaintiff to leave Sara Lee, but instead expanded his roles, goals and responsibilities. [AR 206-207] Smits clarified to Koldras that he discussed Plaintiff's long-term career goals with him as a mentor, and that Plaintiff would need to make a decision sometime later about whether to stay at Sara Lee. [AR 205-206] Smits even felt it unnecessary to clarify his statements on the performance evaluation because it merely memorialized an ongoing career assessment with Plaintiff and there was no miscommunication. [AR 209]

Koldras testified that she made the decision on Plaintiff's initial benefit claim because she was the proper human resources executive to do so. [AR 218-219] As part of her review, she spoke again with Smits to confirm the circumstances of Plaintiff's resignation and her previous communication with Smits about the performance appraisal before deciding to deny Plaintiff's claim. [AR 228-229] Koldras subsequently recused herself from the ERISA Appeal Committee's final review of Plaintiff's claim because she made the initial claim decision. [AR 228-229] The fact that the ERISA Appeal Committee considered Koldras' interview summary does not indicate any bias, as that interview simply provided the Committee with additional facts related to Plaintiff's resignation, as did Smits' interview.

Koldras also confirmed that the circumstances of Plaintiff's resignation were completely dissimilar to other executives who received severance benefits. She confirmed that key executives who are being severed do not receive merit increases or long term incentive grants;

Plaintiff, on the other hand, did receive a merit increase and a long term incentive grant, was not given a termination date, and never met with human resources to discuss his transition because his position was not eliminated. [AR 233-234] Koldras emphasized that Plaintiff's responsibilities were actually expanded, and when he left Sara Lee, his position was filled by someone at his same level, which Koldras stated was a substantial factor in deciding whether an employee was entitled to severance benefits. [AR 234] Koldras also pointed out that when Plaintiff resigned he was asked to stay on for a period of time, for which he would have been compensated (as Patrick had done), and help the Company through a transitional period, however he refused and started his new job immediately. [AR 214-215]

The testimony of Mary Beth DeNooyer, then the ERISA Appeal Committee's Chair, also does not reveal any evidence of bias. DeNooyer testified that Plaintiff's name was kept confidential during his claim appeal review. [AR 136-137] She did not recall any discussions regarding how much it would cost the Company to award Plaintiff severance benefits, and she was unaware how such benefits would be funded. [AR 164-165]

There is nothing in these deposition transcripts that reveals any evidence of bias in the ERISA Appeal Committee's decision. To the contrary, the testimony establishes that proper procedures were followed in denying Plaintiff's claim. For example, Koldras recused herself from the claim appeal review, Plaintiff's identity was kept confidential to the ERISA Appeal Committee, and the Committee distinguished Plaintiff's circumstances from those of other key executives, including Patrick, and reasonably determined Plaintiff was not asked to terminate his employment.

Brad Patrick's separation agreement also shows no evidence of bias. [AR 273-282] Patrick's agreement provides no evidence related to the circumstances of his termination or

severance claim procedures; instead, it merely substantiates the undisputed fact that Patrick received severance benefits.

While Plaintiff may insist that the June 20, 2010 email exchange between DeNooyer and Cerrone somehow discredits Koldras' statement that Plaintiff was given six months notice of his termination date, that tenuous argument is without merit. [AR 283] Koldras' statement was entirely consistent with Patrick's testimony that he was given several months notice before his actual termination date. [AR 257-261] Patrick testified that he was given notice in late Spring 2010 that his termination date would be July 2010, but as July approached, Sara Lee asked him to stay on through August 31, 2010 to assist the Company with an important project. [*Id*; AR 263-264] This is consistent with Cerrone's June 21, 2010 email to Koldras, in which Cerrone asked Koldras to prepare Patrick's severance agreement with an August 31, 2010 termination date. [AR 283] The exact number of months of advance notice given to Patrick is irrelevant. Cerrone's email to DeNooyer only confirms that Patrick's severance agreement had not yet been prepared because Patrick had agreed to delay his termination date at Sara Lee's behest— something Plaintiff outright refused to do. None of this changes the fact that Patrick was involuntarily terminated, his position was eliminated, and he was given several months notice of his termination date. Simply put, Plaintiff's and Patrick's employment terminations are distinguishable from each other.

Nothing in the administrative record, the deposition testimony or other evidence suggests that the ERISA Appeal Committee's decision was affected by a conflict of interest. The evidence merely supports the ERISA Appeal Committee's conclusion that Plaintiff was not entitled to severance because he found another job, asked to receive severance, refused to stay on at the Company's request, his position was not eliminated but filled by someone at his same level,

Plaintiff was assigned additional goals and responsibilities at the same time that he contends he was asked to leave, and he received a merit increase and long term incentive payments, something that did not occur with other severance-eligible executives. Plaintiff cannot meet his burden; the conflict of interest factor is therefore irrelevant and cannot diminish the strong deference afforded to the ERISA Appeal Committee's reasonable decision. As recently concluded in *St. Clare v. Unum Life Ins. Co. of America*, 2012 WL 1666619, *15 (S.D. Ind. 2012), "[s]ince there is no persuasive evidence that Unum's conflict affected its adverse benefits decision in this case, there is no tie to be broken here and the Court need not analyze the potential conflict issue further."

## III. CONCLUSION

The ERISA Appeal Committee's decision was not arbitrary and capricious and Defendants are entitled to summary judgment.

Respectfully submitted:

McDERMOTT WILL & EMERY LLP

By: /s/ Michael T. Graham
Michael T. Graham
227 W. Monroe St., Suite 4700
Chicago, IL 60606
Ph.:    (312) 984-3606
Fx.:    (312) 277-6062
mgraham@mwe.com

ATTORNEYS FOR DEFENDANT
SARA LEE CORPORATION
EXECUTIVE PAY PLAN FOR
KEY EMPLOYEES

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

By: /s/ Mark E. Schmidtke
Mark E. Schmidtke, IN #1733-45
56 S. Washington St., Ste 302
Valparaiso, IN 46383
Ph.:    (219) 242-8668
Fx.:    (219) 242-8669
mark.schmidtke@ogletreedeakins.com

ATTORNEY FOR DEFENDANT
SARA LEE CORPORATION

By: /s/ Kimberly A. Jones
Kimberly A. Jones, 6293083
155 N. Wacker Drive, Suite 4300
Chicago, IL 60606
Ph.: (312) 558-1237
Fx.: (312) 807-3619
kimberly.jones@odnss.com

ATTORNEY FOR DEFENDANT
SARA LEE CORPORATION

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT was filed electronically on December 14 2012, and
that service of same on all counsel of record will be made by the Court's CM/ECF system as
follows:

Jonathan C. Goldman
jon@goldmanehrlich.com

Arthur R. Ehrlich
arthur@goldmanehrlich.com

Michael T. Graham
mgraham@mwe.com

Kimberly A. Jones
kimberly.jones@ogletreedeakins.com

I further certify that service was made on the following non-registered ECF counsel of
record by placing a copy of the foregoing MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT via first-class mail with sufficient first-class postage
pre-paid:

NONE

s/ Mark E. Schmidtke
Mark E. Schmidtke
56 S. Washington St., Suite 302
Valparaiso, IN 46383

DM_US 40183229-1.029636.0203