IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

AARON HOFFMAN,

                    **Plaintiff,**

      **v.**

SARA LEE CORPORATION and SARA
LEE CORPORATION EXECUTIVE PAY
PLAN FOR KEY EMPLOYEES,

                 **Defendants.**

Case No. 11 C 3899

Hon. Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Plaintiff Aaron Hoffman ("Hoffman") filed this action pursuant to Section 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132, for administrative review of Defendants Sara Lee Corporation ("Sara Lee") and Sara Lee Corporation Severance Pay Plan for Key Executives (the "Plan") (incorrectly denominated as the "Sara Lee Corporation Executive Pay Plan for Key Employees") decision to deny him severance benefits. Presently before the Court are the parties' Cross-Motions for Summary Judgment under Federal Rule of Civil Procedure 56. For the reasons stated herein, Plaintiff's Motion for Summary Judgment is denied and Defendants' Motion is granted.

### I. BACKGROUND

### A. The Plan

This case involves the denial of severance benefits to a former employee. Before describing the facts of this matter, it is

necessary to understand the relevant provisions of The Plan.

Section 3.1 provides in part:

> 3.1  Eligibility for Benefits
>
>> A participant who, at his employer's request, agrees to voluntarily terminate his employment with the employers and all subsidiaries and affiliates of the company or whose employment is involuntarily terminated for a reason other than for proper cause . . . and who executes a proper release provided by his employer will be entitled to receive a benefit equal to the total amounts determined in subparagraphs (a) and (b) below:
>>
>>> (a)  one (1) month of base pay for each full year of service; plus
>>>
>>> (b)  an amount up to three (3) months of base pay for a participant who has attained age 40 years but has not attained age 50 years or an amount up to six (6) months of base pay for a participant who has attained age 50 years.

Compl. Ex. A. at 2. The Plan conferred discretionary authority to Sara Lee to construe and interpret the Plan's terms and make factual determinations under the Plan. Specifically, the Plan stated:

> The plan is administered by the company. The company, from time to time, may adopt such rules and regulations as may be necessary or desirable for the proper and efficient administration of the plan and as are consistent with the terms of the plan. The company, from time to time, may also appoint such individuals to act as the company's representatives as the company considers necessary or desirable for the effective administration of the plan. In administering the plan, the company shall have the discretionary authority to construe and

- 2 -

> interpret the provisions of the plan and make
> factual determinations thereunder, including
> the authority to determine the eligibility of
> employees and the amount of benefits payable
> under the plan.

*Id.* Sara Lee delegated its discretionary authority to its senior human resources manager and to the Sara Lee Corporation ERISA Appeal Committee (the "Committee"). The human resources manager is responsible for making initial benefit claim determinations, while the Committee reviews and renders final claim appeal decisions under the Plan.

Payments due under the Plan are paid directly from Sara Lee's general assets. Hoffman was considered a participant in the Plan during his employment at Sara Lee, and, as such, his severance pay was dictated by the Plan.

### B. Hoffman's Departure from Sara Lee

Plaintiff worked for Sara Lee from November 8, 1999 to November 30, 2010. At the time his employment ended, he was the Vice President of Investor Relations. In 2009, Plaintiff began reporting to Sara Lee's Chief Executive Officer Marcel Smits ("Smits"). The parties agree that Smits had conversations with Plaintiff regarding his career, but differ in their descriptions of the substance of those conversations. Plaintiff claims that he had multiple conversations with Smits about leaving Sara Lee, and that Smits agreed Plaintiff would be entitled to severance benefits when he left the company. Defendants deny that Smits ever discussed specifically the topic of Plaintiff leaving Sara Lee, or that Smits

ever told Plaintiff he would be entitled unconditionally to severance benefits when he left the company. Defendants further argue that Smits never asked Plaintiff to leave during any of their conversations.

Smits also prepared evaluations for Hoffman that discussed Hoffman's career path. In February 2010, Smits wrote "Feedback Comments" for Hoffman as part of an evaluation. Smits wrote in part:

> [F]rom a career point of view my recommendation is that you allow yourself another 12 to 18 months to ride up (hopefully) with Sara Lee. This will reflect on you and from there a change of company will whet your appetite. I do believe that [blank] is your thing. If no structural change were to occur at Sara Lee, I am happy for you to stick around, but I don't believe that to be in your best interest.

Pl's. Rule 56.1 Statement of Facts ¶ 4. On July 15, 2010, Smits issued Hoffman's Fiscal Year 2010 Performance Review. In this review, Smits stated that he and Hoffman had discussed "at some point in time [it] being in Aaron's best interest to pursue a career move outside Sara Lee. Aaron would do wisely if in [fiscal year] 2011 he works towards positioning himself in such a way that he is likely to attract a good outside offer." *Id.* ¶ 6.

Hoffman claims that he met with Smits to discuss the July 2010 performance review and that Smits told him that while he was not asking Hoffman to leave immediately, he was asking him to leave "during fiscal year 2011." *Id.* ¶ 7. Hoffman also claims that

- 4 -

Smits told him he would receive severance when he left Sara Lee. Smits denies making any such statements.

Following this discussion, Hoffman began looking for employment outside of Sara Lee. On November 10, 2010, Hoffman informed Smits that he had found a new job. Smits was surprised by this news. The contents of this discussion are again disputed, with Hoffman claiming that he asked Smits to put together the severance package to which he had agreed previously, and Smits claiming that Hoffman requested to be terminated so he could receive severance. In any event, Smits spoke to the Vice President of Human Resources, Stephen Cerrone ("Cerrone"), regarding the prospect of giving Hoffman severance. Cerrone refused to do so. Subsequently, Smits notified Plaintiff that he would not be receiving severance. He also told Plaintiff that the timing of his departure was inconvenient for Sara Lee, and asked Hoffman to stay with the company for several more months. Hoffman declined this request.

On November 30, 2011, Lena Koldras ("Koldras") conducted an exit interview with Hoffman. Again, the parties dispute what was said during this interview, but it is undisputed that Hoffman indicated twice on his exit interview form that he was leaving Sara Lee because he had been told to do so.

### C. Hoffman's Formal Request for Severance Benefits

On December 28, 2010, Plaintiff's counsel wrote a letter to Cerrone regarding Plaintiff's departure and the company's denial of

severance benefits. On January 13, 2011, Sara Lee responded, informing Plaintiff that the company was treating the letter as a claim for benefits under ERISA. When an employee appeals a severance, benefits award, Sara Lee assigns a human resources staff member to approve or deny benefits. Sara Lee assigned Koldras to determine whether Plaintiff was entitled to severance benefits.

Koldras spoke to Cerrone and interviewed Smits regarding Hoffman's departure. However, she never spoke with or contacted Hoffman during her initial review. On January 25, 2011, Koldras issued a letter denying Plaintiff's severance benefits, and explained that Sara Lee did not request that Hoffman end his employment with the company. In that letter she indicated that the decision to deny severance was based upon a review of Hoffman's personnel record, her interview with Smits, and consideration of the Plan's terms.

### D. The ERISA Appeal Committee's Review and Rejection of Hoffman's Severance Benefits Appeal

Pursuant to Section 7.14 of the Plan, when a human resources representative finds against an employee, that employee may appeal the benefits decision to Sara Lee's ERISA Appeal Committee. On February 10, 2011, Plaintiff submitted a letter to appeal Koldras's benefits decision. Upon receiving this appeal, the human resources benefits department put together a collection of relevant documents, plan provisions and facts that were gathered regarding

Plaintiff's claim. That information was then given to the ERISA Appeal Committee ("Committee").

The Committee considered Hoffman's appeal on March 24, 2011. The Committee members were Koldras, Mary Beth DeNooyer (Senior Vice President of Compensation and Benefits), Flavio Costa (Treasurer), Helen Kaminski (Deputy General Counsel) and Edward Moore (Vice Present of Human Resources for the North American food business). Koldras, DeNooyer and Moore reported to Cerrone. Koldras, however, was recused from the Committee's review of Plaintiff's claim because she authored the initial benefit claim denial.

The Committee issued its final determination in a letter dated April 19, 2011. The letter stated that the Committee determined that Sara Lee had not requested Hoffman terminate his employment, and had not given Hoffman a specific termination date or had a transition discussion with him. It noted that Hoffman had received a $140,000 Long Term Incentive ("LTI") grant in August 2010 as well as his regular merit increase on September 2, 2010. The Committee found that all of these facts were contrary to other executives who had received severance benefits. Finally, the letter stated that it would have been unreasonable for Hoffman to interpret Smits's comments as a request that he terminate his employment with Sara Lee.

The amount of severance benefits that would have been due to Plaintiff under the Plan totaled $495,822, consisting of a base salary of $228,000, a bonus of $39,544 and long term incentives of

$228,278. Following the decision of the Committee denying his severance claim, Plaintiff filed this action seeking to recover those benefits on June 8, 2011.

## II.  LEGAL STANDARD

### A.  Summary Judgment Legal Standard Pursuant to Rule 56

Summary judgment should be granted when the record reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). When seeking summary judgment, the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting FED. R. CIV. P. 56(c)). The Court must view the record and any inferences to be drawn from it in the light most favorable to the opposing party." *Levar v. Steelworkers Pension Trust*, No. 07 C 212, 2008 U.S. Dist. LEXIS 6270 at *13 (N.D. Ill. Jan. 28, 2008). Summary judgment is not appropriate if a reasonable jury could return a verdict for the nonmoving party. *Id.*

### B.  Standard of Review Under ERISA

"A court reviews a plan administrator's denial of benefits *de novo* unless the plan gives the administrator discretionary authority to determine eligibility for benefits." *Hackett v. Xerox*

- 8 -

*Corp. Long-Term Disability Income Plan,* 315 F.3d 771, 773 (7th Cir. 2000). If the administrator has "discretionary authority to determine eligibility for benefits or to construe the terms of the plan," a decision to deny benefits can only be overturned if it was arbitrary and capricious. *Firestone Tire & Rubber Co.,* 489 U.S. 101, 115 (1989). To determine what the appropriate standard of review is, the Court can consider the plan language, other "plan documents" and whether the claimant is given adequate notice that the administrator's judgment will be "largely insulated from judicial review." *Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 332 (7th Cir. 2000).

The arbitrary and capricious standard is a high one. Indeed, as one court in this District explained:

> The arbitrary and capricious standard of review is "the least demanding form of judicial review of administrative action." Indeed, the court should not second-guess the administrator's decision; if the "decision has rational support in the record," the court must uphold it. Put simply, an administrator's decision will not be overturned unless it is downright unreasonable.

*Levar*, 2008 U.S. Dist. LEXIS 6270 at *14-15 (quotations omitted). Thus, a reviewing court does not "ask whether the administrator reached the correct conclusion or even whether it relied on the proper authority." *Kobs v. United Wis. Ins. Co.*, 400 F.3d 1036, 1039 (7th Cir. 2005). Instead, the Court only looks as to whether the decision has rational support in the administrative record.

*Levar,* 2008 U.S. Dist. LEXIS 6270 at *14-15.  In considering whether an administrator's decision was reasonable, the court should consider only those materials that were before the administrator when it reached its decision.  *Id.* at 15.

### III.  <u>ANALYSIS</u>

To analyze whether or not the Committee's determination was rational, it is first necessary to examine the materials in the administrative record upon which it relied in making its decision. Then, the Court will review Plaintiff's assertions that the claims process suffered from conflicts of interest that affected his appeal.

### A.  Review of the Committee's Determination

#### 1.  *The Documents and Interviews Considered by the Committee Support Its Decision*

It is undisputed that the Plan conferred discretionary authority to Sara Lee to construe and interpret the Plan's terms and make factual determinations under the Plan.  Because the Plan confers discretionary authority to the administrator, the denial of benefits should be reviewed under an arbitrary and capricious standard.  *Militello v. Cent. States, Se. & Sw. Areas Pension Fund*, 360 F.3d 681, 685 (7th Cir. 2004).

The parties agree that the issue at the heart of this matter is whether or not Hoffman was asked to leave his employment with Sara Lee.  Defendants maintain that their determination that Hoffman left voluntarily for a new position is supported by the

record. Hoffman disagrees, arguing that the record establishes that Plaintiff was asked to leave. Applying the arbitrary and capricious standard to the facts provided above, the Court cannot say that the Committee's decision to deny Hoffman severance benefits was "downright unreasonable." *See, Davis v. Unum Life Ins. Co. of Am.*, 444 F.3d 569, 576 (7th Cir. 2006).

It is true that Hoffman, through his own testimony and without any further support, provided a conflicting version of some events. For example, Hoffman claims that Smits told him to leave the company and promised him severance benefits if he found another job. He also claims that Koldras agreed with him during his exit interview that he had been asked to leave. However, under the Plan, the ERISA Appeal Committee had discretionary authority to consider the conflicting evidence and come to a decision consistent with the Plan's terms. *See, Davis,* 444 F.3d at 578 ("reaching a decision amid such conflicting medical evidence is a question of judgment that should be left to Unum under the arbitrary-and-capricious standard."). Such conflicts in evidence are not uncommon in ERISA cases. In fact, "[t]he record in an ERISA denial-of-benefits case typically contains conflicting or inconsistent evidence, and thus the administrator has no choice but to discount *something*." *Darvell v. Life Ins. Co. of N. Am.,* No. 07-cv-2113, 2008 U.S. Dist. LEXIS 99638 at *23 (D. Minn. Dec. 3, 2008). "Where an ERISA administrator makes a decision in the face of conflicting evidence, it is not for the Court to substitute 'its

own weighing of the conflicting evidence' for the administrator."
*Klassen v. Reliance Std. Life Ins. Co.*, No. C 96-0844 FMS, 1996
U.S. Dist. LEXIS 8963 at *14 (N.D. Cal. June 20, 1996) (quotations
omitted).  The question is whether the Committee's decision was
reasonable based on all the evidence before it.

The Committee considered a variety of materials in coming to
its conclusion that Hoffman did not qualify for a severance under
the Plan.  First, and perhaps most importantly, was his July 15,
2010 performance appraisal prepared by Smits.  This was the last
performance review Hoffman received before his departure from Sara
Lee.  The review notes that:

> Aaron and myself have talked about it at some
> point in time being in Aaron's best interest
> to pursue a career move outside Sara Lee.
> Aaron would do wisely if in FY 2011 he works
> towards positioning himself in such a way that
> he is likely to attract a good outside offer.

Pl's. Rule 56.1 Statement of Facts ¶ 6.  Plaintiff argues that this
supports his assertions that he was asked to leave the company.
However, it does not state specifically that Hoffman had been asked
to leave yet, or that he ever would be.  It simply states that it
might be in his best interest, "at some point" to continue his
career elsewhere, and that he should position himself to attract
good outside offers.  *Id.*  At worst, this constitutes notice that
Hoffman might be asked to leave in the future.  This is
particularly true when read in conjunction with the rest of the
evaluation, which also gave Hoffman new job goals and

- 12 -

responsibilities for the upcoming year. These goals included "[b]uilding up a European shareholder base" and "[b]ringing the outside perspective inside." *See,* Defs.' Rule 56.1 Statement of Facts ¶ 17. In addition, the review noted a possible new job responsibility, stating "[w]e discussed that it could be a nice opportunity for Aaron to broaden his horizons by assuming the role of FAST project manager, over and above his current responsibilities." *Id.* The Court finds it rational for the Committee to conclude that such a performance review, which places new goals and responsibilities on an employee, supports the finding that Hoffman was not asked to leave.

The Committee also reviewed the summary of an interview with Marcel Smits that was consistent with the statements in Hoffman's performance review. Smits indicated that he had spoken to Plaintiff about Sara Lee's uncertain future, and that Plaintiff should build his contacts and take advantage of opportunities. He also stated that he tells all of his direct reports that they are not married to the company. The summary indicated that while Smits discussed Hoffman's career with him, Smits stated that he did not tell Hoffman to leave. Similarly, they considered an interview summary from Koldras that discussed her recollection of Hoffman's exit interview, as well as her understanding of some differences between Hoffman's situation and that of another employee who did receive severance, Brad Patrick ("Patrick").

While Plaintiff claims that Smits told him to leave, he only has his own statements, contained in the letters he sent requesting his severance, as support for those contentions. The Court finds that the documents and interviews in the administrative record provide the Committee with a rational basis to find that Hoffman was not asked to leave the company, and therefore was not eligible for severance benefits.

### 2. *The Committee's Review of Comparable Executives Supports Their Decision*

The Committee noted that in each instance where an executive was terminated at the company's request and received a severance: (1) the executive's direct supervisor requested the employee leave and provided a specific termination date; (2) the executive was not paid a merit increase; (3) the executive was not paid an LTI grant; and (4) the company's standard transition procedures were implemented. Defs.' Rule 56.1 Statement of Facts ¶ 38. The support for this appears to be a brief summary chart comparing executives who received severance with Hoffman. It is undisputed that Hoffman received no specific termination date, received a merit increase on September 2, 2010, received a $140,000 LTI grant in August 2010, and that no standard transition discussions occurred with Hoffman.

In his appeal letter, Hoffman claimed that his situation was similar to others who had received severance. Indeed, he equated his situation to that of Brad Patrick ("Patrick"), a former Sara

Lee human resources executive who was asked to leave the company and received severance benefits upon his departure. The Committee, however, found Hoffman's situation different from that of other employees who received severance benefits, including Patrick. The comparison with Patrick showed that Patrick had been asked to leave explicitly, had not sought outside employment prior to receiving his termination notice and had been given a termination date. In addition, as Patrick's termination date approached, Sara Lee asked him to stay with the company for an additional month to assist with a large project, and he agreed to do so. It is undisputed that Hoffman received no termination date, and set his own departure date unilaterally. Indeed, Smits was surprised when Hoffman informed him of his departure, and asked Hoffman to continue working for the company. It is undisputed that Hoffman denied this request and left for his new employment, a fact noted by the Committee.

Hoffman attempts to argue that Sara Lee's assertions regarding Patrick are false. Hoffman claims that Patrick testified that he received a merit increase prior to being asked to leave. However, his testimony was that he did not recall whether he did. Hoffman also argues that Koldras's interview summary is unreliable, because her statement regarding how much time Patrick was given prior to his termination date conflicted with Patrick's testimony as to how much time was given. That, of course, misses the point. Both Koldras and Patrick testified that Patrick was, in fact, given a

termination date. Hoffman was not. Hoffman thus fails to establish that the Committee's comparison to Patrick was unreasonable.

In addition, the Committee considered another executive who advised the company that she was terminating her employment and requested severance. Defendants declined to pay her severance because they had not asked her to terminate her employment.

The Court finds the Committee's decision to deny Hoffman severance rational based on these other executives who sought severance benefits under the Plan, as well as the other materials in the administrative record.

### B. Plaintiff's Allegations of Conflicts of Interest

Both parties recognize that under circumstances such as this, where the Plan confers discretionary authority, the proper standard of review is whether the decision was arbitrary and capricious. However, Plaintiff argues that there are structural conflicts of interest in the process for seeking and receiving benefits under the Plan that the Court must consider in conducting its review.

The fact that a plan administrator both evaluates claims for benefits and pays benefits claims creates a conflict of interest that must be weighed when considering whether an abuse of discretion has occurred. *Metro. Life Ins. Co., et al. v. Glenn*, 554 U.S. 105, 112 (2008). However, that consideration does not change the standard of review from deferential to *de novo*. *Id.* at 115. As the Seventh Circuit explained, in a situation where the

same entity is vested with responsibility for both claim determinations and pay outs, "such an obvious conflict of interest" should be taken into consideration, along with all of the other relevant factors, in determining whether the entity's determination was arbitrary and capricious. *Leger v. Tribune Co. Long Term Disability Benefit Plan*, 557 F.3d 823, 831 (7th Cir. 2009). In a case where considerations are balanced closely, a conflict of interest may act as a tiebreaker in the claimant's favor. *See, Metro Life Ins.*, 554 U.S. at 117.

While courts are restricted generally to considering the materials the administrator reviewed in reaching its determination to deny benefits, Hoffman filed previously a motion to allow discovery related to potential conflicts of interest with respect to the Plan. The Court granted that motion in part, allowing Hoffman to conduct limited discovery. [ECF No. 39] Specifically, the Court allowed Hoffman to depose members of the Committee, in addition to Koldras and Patrick. Defendants maintain their original objection to the supplementation of the administrative record with this evidence, but the Court stands by its Order granting the limited discovery.

Hoffman now claims there are a number of conflicts of interest that factored into the decision to withhold severance, and as such, the Defendants' determination is void. An examination of the alleged conflicts of interest, however, shows they are insufficient

to overcome the Court's determination that the Defendants' decision was not arbitrary and capricious.

First, Plaintiff claims that Sara Lee failed to provide any formal written procedures for appealing a benefits decision. Hoffman contends that despite the Plan requiring a uniform appeals procedure, Sara Lee has never created formal written procedures for the ERISA Appeal Committee. However, as Defendants point out, the United States Department of Labor dictates the procedures that apply to ERISA benefit determinations. *See,* 29 C.F.R. §2560.503-1 (". . . this section sets forth minimum requirements for employee benefit plan procedures pertaining to claims for benefits by participants and beneficiaries. . . ."). Hoffman fails to identify a failure to meet the minimum requirements described in 29 C.F.R. §2560.503-1. Moreover, there is no requirement that claim procedures need to be written, *Brown v. Retirement Committee of Briggs & Stratton Retirement Plan,* 797 F.2d 521, 533 (7th Cir. 1986). Nor does the Plan document direct the administrator to promulgate written rules. *See, id.* (rejecting claimants argument that defendant violated ERISA by failing to adopt written rules or claims procedures in part because the Plan Charter did not require written rules). The record also shows that the ERISA Appeal Committee examined other instances in which benefits were awarded under the Plan, which indicates a concern for uniform application of the Plan to benefits claimants.

Second, Hoffman argues that one of the most serious errors during the appeal process was Defendants' failure to contact Plaintiff during the initial phase of his appeal. Hoffman claims that Defendants' failure to do so deprived him of a "full and fair" administrative review of his claim denial. *See,* 29 U.S.C. § 1133(2). He argues that a court can overturn a decision where a defendant has blatantly disregarded pertinent evidence, and that the Court should do so here because in failing to contact Hoffman during her initial investigation, Koldras failed to consider one side of the story. However, the record indicates that Hoffman's side of the story was explained both during his exit interview and more thoroughly in the December 28, 2010 letter his attorney sent to initiate his benefits claim. Koldras then went on to investigate Hoffman's allegations by interviewing Smits. The Court fails to see how this indicates a failure to consider Hoffman's side of the story. In addition, Hoffman fails to identify a single piece of additional information he would have added to that which he already provided. Finally, to the extent Plaintiff is complaining that he was not interviewed or given a chance to present oral testimony on his behalf, a "full and fair review" under § 1133 does not require oral testimony; a written record suffices. *See, Brown*, 797 F.2d at 534.

Third, Hoffman claims that the fact that the ERISA Appeal Committee was asked to review the work of "their longtime colleague," Lena Koldras, created a conflict of interest. Pl's.

Mem. in Support of Summ. J. at 9, ECF No. 65. Hoffman claims, without citing to any factual or legal support at all, that "[t]he committee members would naturally be expected to support their longtime colleague." *Id.* Not only is this statement completely conclusory, it is simply incorrect. Without any facts in the record to indicate otherwise, it is just as likely that the members of the committee disliked Koldras, or had various reasons not to support her conclusions.

Fourth, Plaintiff asserts that there was a conflict of interest because the reviewing employees were high-level executives who "almost certainly" would have been concerned about the corporate finances when reviewing the benefits denial. Pl.'s Mem. in Support of Mot. for Summ. J. at 10. Hoffman cites no evidence to support his contention that the Committee was concerned with company finances at the time it rendered its decision. The Committee's chair did not know how severance benefits were funded. In any event, this potential conflict is simply a component of the inherent conflict of interest of having the same entity be responsible for both claim evaluation and pay out already identified.

Fifth, Hoffman argues that there was a significant conflict of interest because the employees on the Committee were supervised directly by the individual who decided initially to deny Hoffman benefits, Steven Cerrone. Hoffman is correct that the Court can consider "the terms of employment of the staff that decides

benefits claims." *Marrs v. Motorola*, 577 F.3d 783, 789. Defendants claim that while Cerrone made the decision to reject Plaintiff's request to be severed, it was Koldras who made the initial decision to deny his benefits claim. Thus, Defendants argue, it was Koldras's decision, not Cerrone's, that was reviewed by the Committee.

The Court agrees that the reporting situation of the decision-makers involved in Hoffman's appeal is less than ideal. According to Defendants, Cerrone made the decision to reject Hoffman's alleged request to be severed. Even accepting that as true, it means that Koldras, in performing the initial review, was in a position where she was reviewing a superior's decision. In addition, two other ERISA Appeal Committee members who reviewed Koldras's initial denial also reported to Cerrone. Under other circumstances, the Court might consider such a conflict of interest sufficient to overturn the denial. However, there are several factors that counsel the Court against doing so. First, Koldras was recused from the Committee's review of her initial determination, so she was not involved in the final decision to deny Hoffman's benefits claim. Next, while two of the remaining Committee members reported to Cerrone, two others did not. Finally, for the reasons discussed above, this case does not involve a benefits withholding that the Court considers a close call in which a conflict serves as a tiebreaker in Plaintiff's favor. The Defendants' decision to deny Hoffman was not arbitrary

and capricious, and none of the alleged conflicts of interest merit changing that standard.

### III. <u>CONCLUSION</u>

Plaintiff has provided no evidence that the Defendants' decision to deny him severance benefits under the Plan was arbitrary or capricious. Nor has Plaintiff shown that such a strong conflict of interest existed to warrant setting aside the committee's decision. As such, Defendants' Motion for Summary Judgment [ECF No. 61] is granted and Plaintiff's Motion for Summary Judgment [ECF No. 64] is denied.

**IT IS SO ORDERED.**

 

_____
    Harry D. Leinenweber, Judge
    United States District Court

**DATE:** September 9, 2013

- 22 -